EMILIO M. GARZA, Circuit Judge,
concurring specially:
I agree with Judge Jolly that “the Supreme Court, in Planned Parenthood of Southeastern Pennsylvania v. Casey, ... reaffirmed the essential holding of Roe v. Wade ”[1] and that “the Louisiana [Abortion] Statute is clearly unconstitutional under Casey.”[2] See Planned Parenthood v. Casey, — U.S. -,-, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992) (“After considering the fundamental constitutional question resolved by Roe, principles of institutional integrity, and the rule of stare deci-sis, we are led to conclude this: the essential holding of Roe v. Wade [that a woman has the right to terminate her pregnancy before viability] should be retained and once again reaffirmed.”). Accordingly, I concur in Judge Jolly’s opinion.
Casey, nonetheless, causes me concern. In essence, Casey is not about abortion; it is about power. “The issue is whether [abortion] is a liberty protected by the Constitution of the United States.” Id., — U.S. -, 112 S.Ct. at 2874 (Scalia, J„ dissenting). Two essential facts seem apparent: “[T]he Constitution says absolutely nothing about [abortion], and ... the longstanding traditions of American society have permitted [abortion] to be legally proscribed.” [3] Id. (footnote omitted) (citation omitted). Casey “decorate[s] a value judgment[4] and conceal[s] a political choice.” Id., — U.S. at -, 112 S.Ct. at 2875. If this assessment is correct, the Court’s reaf-firmance — whether viewed as a good or *32 bad result — has accelerated the Court “towards systematically eliminating checks upon its own power; and [at least with Roe and Casey ] it [has] succumb[ed] [to this temptation]”. Id., — U.S. at -, 112 S.Ct. at 2874.
Because the decision to permit or proscribe abortion is a political choice, I would allow the people of the State of Louisiana to decide this issue for themselves.[5] Nonetheless, I acknowledge that Casey controls, and therefore, I concur.

. 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

. Maj. op. at 28.

. Compare Roe, 410 U.S. at 138-42, 93 S.Ct. at 719-21 (historical review of abortion laws in America) with Michael H. v. Gerald D., 491 U.S. 110, 121-28, 109 S.Ct. 2333, 2341-44, 105 L.Ed.2d 91 (1989) (overview of presumption of legitimacy) and Bowers v. Hardwick, 478 U.S. 186, 191-95, 106 S.Ct. 2841, 2844-46, 92 L.Ed.2d 140 (1986) (brief history and list of sodomy laws in America).

. The joint opinion states: “Our obligation is to define the liberty of all, not to mandate our own moral code. The underlying constitutional issue is whether the State can resolve these philosophic questions in such a definitive way that a woman lacks all choice in the matter, except perhaps in those rare circumstances in which the pregnancy is itself a danger to her own life or health, or is the result of rape or incest." Casey, — U.S. at -, 112 S.Ct. at 2806. I do not agree with the joint opinion's articulation of the issue. First, States legislate morality every day in the form of criminal statutes. For exam-pie, “[a] person commits an offense if he ... intentionally or knowingly causes the death of an individual," see Tex.Pen.Code Ann. § 19.02 (West 1992), is the legal formulation of the commandment: "Thou shall not kill.” See Bowers v. Hardwick, 478 U.S. at 196, 106 S.Ct. at 2846 (“The law, however, is constantly based on notions of morality, and if all laws representing essentially moral choices are to be invalidated under the Due Process Clause, the courts [would] be very busy indeed.”).
Second, the underlying constitutional issue is not "whether the State can resolve these philosophic questions in such a definitive way that a woman lacks all choice in the matter,” but whether States have the constitutional power to make this ontological choice. For example, States choose for ontological reasons, to protect the lives of their citizens. In this instance, "liberty” gives way to protection of human life. See Casey, — U.S. at -, 112 S.Ct. at 2859 (Rehnquist, C.J., dissenting) ("To look 'at the act which is assertedly the subject of a liberty interest in isolation from its effect upon other people [is] like inquiring whether there is a liberty interest in firing a gun where the case at hand happens to involve its discharge into another person’s body.’ ” (quoting Michael H. v. Gerald D., 491 U.S. at 124 n. 4, 109 S.Ct. at 2342 n. 4)). The ultimate question — if one accepts the joint opinion's view that viability is critical — is whether States have the constitutional authority to decide for themselves whether viability makes an ontological difference.

. See Michael H., 491 U.S. at 122, 109 S.Ct. at 2341 ("Whenever the Judiciary [realizing that the present construction of the Due Process Clause represents a major judicial gloss on its terms, as well as on the anticipation of the Framers, strikes down legislation adopted by a State], it unavoidably pre-empts for itself another part of the governance of the country without express constitutional authority.” (quoting Moore v. East Cleveland, 431 U.S. 494, 544, 97 *33 S.Ct. 1932, 1958, 52 L.Ed.2d 531 (1977) (White, J., dissenting))).